

**HUGHES & PRITCHARD, LLP**
Gregory J. Hughes  # 071288
Christopher D. Hughes  # 254864
3017 Douglas Boulevard, Suite 300
Roseville, California 95661
Telephone (916) 774-7506
Facsimile (916) 791-1644
Email: hp@hp-llp.com

Attorneys for Geoffrey Richards,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>VALERIE SUE VANHORN and DANNY PAUL VANHORN,<br><br>Debtors. | Case No.: 10-36969-B-7<br><br>DCN: GJH-3<br><br>**CHAPTER 7 TRUSTEE'S MOTION FOR APPROVAL OF A REAL ESTATE PURCHASE AND SALE AGREEMENT, INCLUDING SALE PROCEDURES, OVERBID PROCEDURES, AND BREAK-UP FEE**<br><br>Date:     November 9, 2010<br>Time:    9:32 a.m.<br>Dept:    B (Courtroom 32) |

Geoffrey Richards, the Chapter 7 Trustee ("Trustee") in the above-captioned Chapter 7 case, hereby moves for an order pursuant to sections 105, 363, 503, and 507 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002(a), 6004, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a Real Estate Purchase and Sale Agreement, including sale procedures, overbid procedures, and a breakup fee, in order to facilitate and maximize the Estate's realization of value from the sale of assets, as follows:

///

///

- 1

## SUMMARY

The principal asset of the Estate is a 12,000 acre ranch ("the Ranch") located in the state of Idaho. The Ranch is valued in the Debtors' schedules for $6 million. The schedules indicate that the Ranch is subject to encumbrances totaling less than $1 million in encumbrances. Thus, the Ranch has substantial equity for the benefit of the Estate.

The Trustee has entered into a Real Estate Purchase and Sale Agreement ("REPSA") for the Ranch with an entity known as Smokey Dome LLC or assignee ("Smokey Dome"). A copy of the REPSA is submitted herewith as Exhibit A to the Declaration of Geoffrey Richards submitted herewith. The sale price is $5,750,000. By separate motion, the Trustee is requesting approval for the sale to Smokey Dome or a sale to an overbidder.

The REPSA has certain conditions concerning the procedures for sale of the Ranch. These conditions, which deal with the procedures for overbids and a breakup fee in the event that Smokey Dome's initial offer is not the winning bid, must be approved by the Court as a part of the Trustee's acceptance of Smokey Dome's offer.

The present motion seeks Court approval of the REPSA, including the terms relating to sale procedures, overbid procedures, and a breakup fee in the event that that the Ranch is sold to an overbidder. The Court's approval of the REPSA will not constitute an approval of the sale to Smokey Dome, because the sale itself is subject to overbids, and the Ranch might be sold to a third party, or sold to Smokey Dome for an amount in excess of Smokey Dome's present price.

This motion is supported by the Declaration of Geoffrey Richards and the exhibits filed in support of the Motion, the Court's record and file in this case, and such other materials and arguments as may be presented at or before the hearing.

## JURISDICTION

This Court has jurisdiction over this Motion pursuant to 28 U. S. C. §§157 and 1334, 11 U.S.C. § 363, and Rules 2002 and 6004. This Motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

///

///

# RELIEF REQUESTED

The Trustee has agreed to the terms of Smokey Dome's REPSA, subject to this Court's approval of the procedures for a hearing on Court approval of the sale, overbid procedures, and payment of a break-up fee to Smokey Dome in the event that Smokey Dome is not the successful bidder. By this Motion, the Trustee requests the Court to enter an order granting the following relief, pursuant to the provisions of 11 U.S.C. 105, 363(b), and 503, in order to expedite the sale of the Ranch and real property improvements:

1. Approving the REPSA, in the form of Exhibit A to the Declaration of Geoffrey Richards ("Richards Declaration"), or as modified prior to the hearing date of this Motion, subject to the requirement of Court approval for the actual sale.
2. Approving credit of $100,000 to Smokey Dome, against the purchase price, based on a pre-petition payment of $100,000 by Smokey Dome's predecessor in interest to the Debtors.
3. Approving the following overbid requirements for any person or entity wanting to overbid Smokey Dome's offer at the time of the hearing on approval of the sale: (a) $100,000 must be deposited with the Trustee, as refundable earnest money, in the form of cash or cash equivalent, not later than noon on the Friday before the hearing date on sale of the Ranch; (b) the initial overbid amount will be not less than $250,000; (c) subsequent overbids will be not less than $50,000; (d) in the event of overbids, Smokey Dome will be permitted to bid without posting an additional deposit; (e) any overbidder, including Smokey Dome, will be required to close in accordance with the terms of the Asset Purchase Agreement between the Trustee and Smokey Dome, by paying the amount of the court-approved purchase price; and
4. Approving a break-up fee of $137,143 to Smokey Dome, in the event that Smokey Dome is not approved as the purchaser of the Ranch, said break-up fee to be paid out of the sale proceeds.

///

///

- 3

## FACTS

This Motion is based on the following facts:

1. According to the Debtors' schedules, they own real property in Idaho described as "700 W 270 N. Fairfield, Idaho 83327" ("the Ranch"). Although not disclosed on the Schedules, the Trustee is informed and believes that the Ranch is approximately 12,000 acres; that a portion of the Ranch is owned in fee simple; and that the balance is leased. The Ranch is valued on the Debtors' Schedule A at $6 million.

2. On Schedule D, the Debtors list encumbrances totaling slightly less than $1 million against the Ranch. However, except for one deed of trust securing a note for $800,000, all of the voluntary liens listed in Schedule D against the Ranch were recorded post-petition.

3. Prior to the petition date, the Debtors entered into an agreement for sale of the Ranch to Kelley Development LLC, or its assignee. The assignee of Kelley Development was Smokey Dome; thus, Smokey Dome was in contract to purchase the Ranch. The agreed-upon purchase price was $6 million. In connection with the pre-petition sale agreement, Kelley Development paid $100,000 to the Debtors and agreed to the immediate release of the $100,000 to the Debtors.

4. The Trustee is informed and believes that because of litigation initiated in Idaho by David Jones (a creditor of the Debtors) in order to block the sale, the sale of the Ranch did not close prior to the deadline for close of escrow. Prior to the petition date, Kelley Development recorded a lien for $100,000 against the Ranch, based on the deposit which it had released to the Debtors. The deposit was not repaid by the Debtors prior to the petition date, and it appears that the Debtors spent the $100,000, since it is not listed as an asset.

5. The Trustee has actively marketed the Ranch through an Idaho real estate agent. To date, only one offer has been received. That offer, from Smokey Dome, is for $5,750,000. See Exhibit A submitted herewith. The Trustee has accepted the offer, and has signed the REPSA, subject, of course, to Court approval.

The REPSA provides, and the Trustee has agreed, to the following:

///

      a. A credit of $100,000 to Smokey Dome, against the purchase price, based on the pre-petition payment of $100,000 by Smokey Dome's predecessor in interest to the Debtors.

      b. The following overbid procedures: (1) any person or entity wanting to overbid Smokey Dome's offer at the time of the hearing on approval of the sale must provide a deposit of $100,000 to the Trustee, as refundable earnest money, in the form of cash or cash equivalent, not later than noon on the Friday before the hearing date on sale of the Ranch; (2) the initial overbid amount will be not less than $250,000; (3) subsequent overbids will be not less than $50,000; (4) in the event of overbids, Smokey Dome will be permitted to bid without posting an additional deposit; (5) any overbidder, including Smokey Dome, will be required to close in accordance with the terms of the REPSA. Closing, of course, will require payment of the Court-approved purchase price.

      c. A breakup fee of $137,143 to Smokey Dome, in the event that Smokey Dome is not approved as the purchaser of the Ranch, said breakup fee to be paid out of the sale proceeds.

Included in the breakup fee will be any claim of Kelley Development or Smokey Dome regarding the $100,000 previously paid by Kelley Development LLC; thus, in the event that the sale is approved to a purchaser other than Smokey Dome, the Trustee is agreeing to pay back the $100,000 previously paid to the Debtors, and to pay an additional $37,143 to Smokey Dome, to cover its expenses in connection with what will be, at that point, two unconsummated agreements to purchase the Ranch.

    6. The Trustee believes that the sale of the Ranch is warranted by the present circumstances of this case, and has determined that the proposed sale of the Ranch to Smokey Dome is beneficial to the Estate and its creditors, and based upon reasonable terms, for several reasons.

    7. First, the Trustee believes that the proposed sale price, subject to qualified overbids, as agreed to by Smokey Dome, is reasonable and fair, and commensurate with the

value of the Ranch under current market conditions. The offer from Smokey Dome is the highest and best (and only) offer received by the Trustee, after marketing of the Ranch and full exposure to the relevant market. The Trustee does not believe that further delay in accepting the offer from Smokey Dome, in order to permit further marketing of the Ranch, would produce a higher or better purchase price.

8. Second, the Trustee has retained an experienced real estate agent in Idaho to market the Ranch. This agent, who had previously marketed the Ranch for the Debtors prior to the filing of the petition, is familiar with the Ranch and local market conditions. In addition, he is aware of prior inquiries made concerning the Ranch during the time when it was previously marketed, and has followed up with all persons who have expressed prior interest in the Ranch. The prior $6 million offer, and the present $5,750,000 offer, represent the only actual offers made for the Ranch during the period that it has been on the market.

9. Third, the potential for overbids allows creates a potential for a higher price than the $5,750,000 that Smokey Dome has agreed to pay.

10. Fourth, the terms of the REPSA concerning the pre-petition deposit of $100,000 and the breakup fee, serve to resolve what might otherwise have been a contentious dispute. Absent the present REPSA, Kelley Development and/or Smokey Dome would have been asserting a lien against the Ranch for $100,000, and it is quite possible that the Trustee would have wound up in litigation concerning the validity of that asserted lien, and the Estate's obligation, if any, to refund the Deposit. By including the $100,000 as part of the purchase price or as part of the breakup fee, the Estate no longer is subject to a secured claim for $100,000 for the deposit.

11. Fifth, delays in the sale of the Ranch are costly to the Estate, given the continuing costs of insurance, utilities and maintenance of the Ranch. Income from grazing leases on the Ranch may or may not be sufficient to offset the expenses of holding the Ranch, but there is no guarantee that additional time will result in a higher price for the Ranch. In addition, grazing leases only provide income during the late spring to fall of the year—which means that the Ranch will not provide income during the next five or six months.

12. For all of the foregoing reasons, the Trustee believes that the proposed sale, on the terms stated in the REPSA, is in the best interests of the Estate, and that the terms are fair and reasonable under all the circumstances.

## LEGAL ARGUMENT

In accordance with Bankruptcy Rule 6004, sales of property outside the ordinary course of business may be by private sale or public auction. The Trustee has determined that the sale of the Ranch by private sale will enable him to obtain the highest price for the Ranch, thereby maximizing the value of the estate and is in the best interest of the Debtors' estate and creditors. The Trustee has also determined that the sale of the Ranch to Smokey Dome or an overbidder, pursuant to the terms of the REPSA, will permit the Estate to realize the maximum possible price for the Ranch.

### A. **The Notice of Bidding Procedures and Overbid Procedures Is Appropriate**

The Trustee believes that he will obtain the maximum recovery for the Debtors' creditors if the Ranch is sold through a private sale with the potential for overbid, following marketing efforts by a local real estate agent. The Trustee has previously obtained court approval for employment of an experienced real estate agent in Idaho to market the Ranch. This agent, who had previously marketed the Ranch for the Debtors prior to the filing of the petition, is familiar with the Ranch and local market conditions. In addition, he is aware of prior inquiries made concerning the Ranch during the time when it was previously marketed, and has followed up with all persons who have expressed prior interest in the Ranch. The prior $6 million offer, and the present $5,750,000 offer, represent the only actual offers made for the Ranch during the period when it has been on the market. The Trustee does not believe that additional marketing time will result in substantially higher offers; if anyone else is interested now in acquiring the Ranch, the potential for overbids allows for such persons to bid to purchase the Ranch.

Under Bankruptcy Rule 2002(a) and (c), the Trustee is required to notify creditors of the proposed sale of the Ranch, including a disclosure of the time and place of the sale/sale procedures, the terms and conditions of a sale, and the deadline for filing any objections. Here, under this Court's local rule 9014-1, any objections to the sale must be filed no less than 14 days

prior to the hearing of this Motion. The Trustee submits that the notice procedures proposed herein comply fully with Bankruptcy Rule 2002 and this Court's local rules, and are reasonably calculated to provide timely and adequate notice of the sale to the Debtors' creditors and other parties in interest, as well as to those parties who have expressed an interest, or may express an interest, in bidding on the Ranch.

B.     **The Bid Procedures Are Appropriate and Will Maximize the Value Received for the Subject Properties and the Additional Properties**

Courts have made clear that a trustee's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the estate. *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.),* 147 B.R. 650, 656-657 (Bankr. S.D.N.Y. 1992); *In re 995 Fifth Ave. Assocs., L.P.,* 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (same).

The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See., e.g., Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.),* 107 F. 3d 558, 564-565 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources,* 147 B.R. at 659 ("It is a well-established principal of bankruptcy law that the . . . [debtors'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *Cello Bag Co. Inc. v Champion Int'l Corp. (In re Atlanta Packaging Products, Inc.),* 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the contest of bankruptcy sales. *See, e.g., In re Montgomery Ward Holding Corp.,* Case No. 97-1409 (PJW) (Bankr. D. Del. Aug 6, 1997); *In re Fruehauf Trailer Corp.,* Case No. 96-LS63 (PJW) (Bankr. D. Del. Feb. 26, 1997); *Integrated Resources,* 147 B.R. at 659 (such procedures "encourage bidding and to maximize the value of the debtor's assets"); *In re Financial News Network, Inc.,* 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules

///

for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for fair and efficient resolution of bankrupt estates").

The proposed sale procedures will allow the Trustee to conduct the sale in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction, thereby increasing the likelihood that the Trustee will receive the best possible price for the Ranch, by helping ensure a competitive and fair bidding process. They also allow the Trustee to sell the Ranch in as expeditious a manner as possible, which the Trustee believes is essential to maintaining and maximizing its value.

The Trustee believes that the proposed sale procedures will encourage bidding for the Ranch and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. See *Integrated Resources,* 147 B.R. at 659, *995 Fifth Avenue Assocs.,* 96 B.R. at 28. The requirement of an initial overbid amount of $250,000 will require that any overbidder match the pre-petition $6,000,000 offer of Kelley Development, and will be the equivalent of a 4% increase over the Smokey Dome offer of $5,750,000. The Trustee does not know whether Smokey Dome will overbid in response to an overbid amount of $6,000,000, so the Trustee believes that it is important to require a substantial initial overbid amount—because the initial overbid may be the only overbid. After the initial overbid, a lesser overbid amount of $50,000 should encourage additional bidding. Thus, the $250,000 initial overbid amount and subsequent overbid amounts of $50,000 both serve the basic goal of maximizing the sale price.

In addition, the Trustee submits that his willingness to pay a break-up fee in connection with Smokey Dome's offer will also provide benefit to the Estate by securing the benefit of what amounts to a stalking-horse bid. The existence of a firm stalking-horse offer is essential to the Trustee's sale of the Ranch, because it provides a minimum price at which the Ranch will be sold, and puts potential buyers on notice of the minimum amount that they will need to pay in order to bid on the Ranch. The minimum overbid amounts of $250,000 (first bid) and $50,000 (all bids after the first overbid) will also put potential buyers on notice of the levels at which they will need to bid.

Moreover, during the period prior to the sale date, higher bidders will also necessarily be prompted to engage in the auction process. In other words, the existence of Smokey Dome's offer should increase competitive bidding and induce interested parties to make their best offers for the Ranch. Further, although the estate would bear the cost of the break-up fee, subsequent bidders effectively pay those costs because the minimum first overbid amount is substantially in excess of the break-up fee. Thus, the Estate will either be in a position to sell to Smokey Dome, without payment of a break-up fee, or will incur the break-up fee, but sell the Ranch for at least $250,000 more than Smokey Dome's present price.

In consideration of the benefits of the bid protections and the apparent value of the Ranch, the Trustee submits that the proposed sale procedures are reasonable and appropriate. Numerous bankruptcy courts have approved a range of reasonable bid protections for stalking horse bidders. Here, the proposed breakup fee of $137,143 is about 2.4% of the sale price, and a substantial portion of it is represented by funds (the $100,000 deposit by Kelley Development LLC) which the Estate might be obligated to pay to Smokey Dome regardless of who acquires the Ranch.

Thus, the proposed sale procedures are reasonable, appropriate, and within the Trustee's sound business judgment under the circumstances because they will serve to maximize the value that the Trustee will recover through the sale of the Ranch.

## C. The Sale of the Ranch Pursuant to the REPSA Is Authorized by Section 363 as a Sound Exercise of the Trustee's Business Judgment

Section 363 of the Bankruptcy Code provides that a trustee, "after notice and a hearing may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b). Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, such use, sale, or lease should be authorized in the sound business judgment of the debtor. *See the Official Committee of Unsecured Creditors v The LTV Corp. (in re Chateaugay Corp.),* 973 F.2d. 141, 143 (2d Cir. 1992); *Committee of Equality Sec. Holders v Lionel Corp. (In re Lionel Corp.),* 722 F. 2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business

justification" to approve the use, sale, or lease of property outside the ordinary course of business). In that regard, a sale of assets is appropriate if the debtor or trustee demonstrates a "sound business purpose" for the sale. *See e.g. American Development Corp.,* 95 B.R. 735, 739 (Bankr. C.D. 1989); *In re Walters,* 83 B.R. 14 (9th Cir. BAP 1988). Indeed, "[w]here the debtor articulates a reasonable basis for its business decisions as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Committee of Asbestos-Related Litigants and/or Creditors v Johns-Manville Corp.),* 60 B.R. 612, 616 (Bankr. S.D.N.Y 1986).

Courts have considered a number of factors in determining whether to approve a sale of assets under Section 363(b) including (1) whether a sound business reason exists for the proposed transaction; (2) whether fair and reasonable consideration is being provided; (3) whether the transaction has been proposed and negotiated in good faith; and (4) whether adequate and reasonable notice has been provided. *See e.g. In re Ewell,* 958 F.2d 275 (9th Cir. 1992).

The business judgment rule shields a trustee from judicial second-guessing. *Johns-Manville Corp.,* 60 B.R. at 615-616 ("a presumption of reasonableness attaches to a debtor's management decisions"). In the context of actions by a board of directors, once a valid business justification has been articulated, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interest of the company.'" *The Official Comm. Of Subordinated Bondholders v Integrated Resources, Inc. (in re Integrated Resources, Inc.),* 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v Van Gorkom,* 488 A.2d 858, 872 (Del. 1984)). In other words, if a trustee's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1).

Here, the proposed sale fits squarely within the parameters of the sound business judgment test. First and foremost, the Trustee has demonstrated a sound business purpose for the proposed sale, given the circumstances, including market conditions and the benefits of the sale at this time. As set forth, the Ranch has been adequately marketed, the offer from Smokey Dome

is the highest and best offer received by the Trustee and is the result of good faith arms' length negations. The sale price of $5,750,000 is reasonable and within the range of what appears to be the market value, particularly with the prospect and allowance for overbids.

Second, the Trustee has demonstrated that the proposed sale is in the best interests of the Estate. Delaying the process to try to obtain a higher price may or may not be successful, and during the delay, the Estate will incur expenses in connection with the Ranch. While the Ranch may generate income from grazing leases, that income is only in the Spring to Fall time period. In other words, there is little potential for income during the next six months. In sum, the sale to Smokey Dome or an overbidder is the only real opportunity for the Estate to obtain value from the Ranch within a reasonable period of time.

Third, pursuant to 11 U.S.C. § 704(a)(1), a trustee is required to "collect and reduce to money the property of the estate . . . and close such estate as expeditiously as is compatible with the best interests of parties in interest." Absent some overriding reason, delaying the sale of the Ranch would not be compatible with the best interests of creditors, since a delay in the sale of the Ranch would likely delay the ultimate distributions to creditors.

The other factors to be considered in evaluating a sale also support the REPSA. The price of $5,750,000 is in the ballpark with the prior offer of $6 million which the Debtors were willing to accept. Diligent marketing before and after the filing of the Chapter 7 petition has not produced any higher offers. With the recent decline in real estate values throughout the country, it appears to the Trustee that the price being offered by Smokey Dome is reasonable under the circumstances.

The Trustee has negotiated in good faith with Smokey Dome, through the intermediaries of his real estate agent, his attorney, and Smokey Dome's real estate agent and attorney. The price offered by Smokey Dome is less than what it was willing to pay prior to the filing of the petition, but is not unreasonably less than that prior offer. All of the terms of the agreement with Smokey Dome are included in the REPSA, and Smokey Dome is willing to act as a stalking horse purchaser, even though it may wind up losing the Ranch to an overbidder. Both parties are acting in good faith in connection with this transaction.

Finally, all of the notice requirements for a sale of real property have been satisfied. See section A of the Legal Argument, *supra* at pp. 7-8.

**CONCLUSION**

For all of the foregoing reasons, the Trustee's motion should be granted. The Trustee therefore requests entry of an order:

a. Approving the REPSA, (Exhibit A to the Declaration of Geoffrey Richards), or as modified prior to the hearing date of this Motion, subject to the requirement of Court approval for the actual sale:

b. Approving credit of $100,000 to Smokey Dome, against the purchase price, based on a pre-petition payment of $100,000 by Smokey Dome's predecessor in interest to the Debtors;

c. Approving the following overbid requirements for any person or entity wanting to overbid Smokey Dome's offer at the time of the hearing on approval of the sale: (a) $100,000 must be deposited with the Trustee, as refundable earnest money, in the form of cash or cash equivalent, not later than noon on the Friday before the hearing date on sale of the Ranch; (b) the initial overbid amount will be not less than $250,000; (c) subsequent overbids will be not less than $50,000; (d) in the event of overbids, Smokey Dome will be permitted to bid without posting an additional deposit; (e) any overbidder, including Smokey Dome, will be required to close in accordance with the terms of the Asset Purchase Agreement between the Trustee and Smokey Dome, by paying the amount of the court-approved purchase price; and

///
///
///
///
///
///
///

d. Approving a breakup fee of $137,143 to Smokey Dome, in the event that Smokey Dome is not approved as the purchaser of the Ranch, said breakup fee to be paid out of the sale proceeds.

Dated: October 12, 2010

                                                    HUGHES & PRITCHARD, LLP

                                                    By:    */s/Gregory J. Hughes*
                                                      Gregory J. Hughes, Attorney for
                                                      Geoffrey Richards, Chapter 7 Trustee